IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DESIGNSENSE, INC. )<br>) CASE NO: 4:13-cv-00010-DGK<br>Plaintiff, )<br>vs. )<br>MRIGLOBAL )<br>and )<br>ALLIANCE FOR SUSTAINABLE )<br>ENERGY, LLC )<br>)<br>Defendants. ) | |

## AMENDED COMPLAINT

The plaintiff DesignSense, Inc. for its causes of action against MRIGlobal (hereafter "MRI") and the Alliance for Sustainable Energy, LLC (hereafter the "Alliance"), alleges and states:

### Facts Applicable to All Counts
#### a. Parties

1. DesignSense, Inc. is a Missouri Corporation with a principal place of business at 25055 West Valley Parkway, Suite 210, Olathe, KS 66061.
2. MRI is a Missouri non-profit corporation with a registered agent of Reachel Beichley, 425 Volker Boulevard, Kansas City, Missouri 64110. Its principle place of business is in Jackson County, Missouri.
3. The Alliance is a Delaware Limited Liability Company and may be served at its registered agent Steven A. Silbergleid, NREL, 1617 Cole Boulevard, Mailstop 1734, Golden, CO 80401. MRI and a company called Battelle Memorial Institute are the two members of the Alliance limited liability company.
4. MRI and the Alliance manage and operate the National Renewable Energy Laboratory in Golden, Colorado under contract with the United States Government, Department of Energy (DOE).
5. MRI and the Alliance from time to time refer to themselves as the "National Renewable Laboratory," "NREL," or representing "NREL".

#### b. Jurisdictional Statement

6. All parties are residents of Jackson County, Missouri. MRI's principle place of business is in Jackson County, Missouri. The Alliance, with MRI being one of two members, has its member MRI's principle place of business as Jackson County, Missouri. The acts that gave rise to these causes of action arouse in Jackson County, Missouri.
7. Therefore, venue and jurisdiction are appropriate in Jackson County.

### c. Background Facts

8. On or about September 4, 2007, DesignSense signed a "Subcontract No. AFJ-7-77640-01 (hereafter "Subcontract") with MRI.

9. DesignSense was the author of the detailed specifications for an RFP used on the RSF Building in Colorado (hereafter "RFP"). These detailed specifications included in the RFP are trade secrets and based on DesignSense's proprietary and copyrighted 3PQ format.

10. As part of the Subcontract, DesignSense provided design-build support services including drafting the detailed specifications for the RFP, which was the heart of the process to manage costs and construction. The process used by DesignSense to create the detailed specifications for the RFP is called the 3PQ Format.

11. The 3PQ Format is a proprietary format used by DesignSense to assist building owners to manage and control the design and build process for commercial buildings.

12. Designsense completed drafting of the detailed design specification under the Subcontract in 2008.

13. In November of 2010, a Net-Zero Energy Buildings Expert Roundtable IV was held (hereafter "November 2010 Roundtable"). Among the participants was Ron Judkoff of MRI and the Alliance.

14. At the November 2010 Roundtable, when speaking about the RFP, Judkoff on behalf of MRI and the Alliance stated: "We of course applied all that hard earned knowledge in the detailed specification document **we wrote** for the design/build Request for Proposal (RFP). The RFP was the start of the National Renewable Laboratory (NREL) Research Support Facility (RSF) Project. (Emphasis added)" See P. 6 of Transcript from November 2010 Roundtable.

15. In early 2012, DesignSense learned of the false claim made by MRI/Alliance relating to the authorship of the detailed specification document contained in the RFP at the November 2010 Roundtable while discussing its services with a prospective governmental client.

16. The audience targeted to read and review the transcript from the November 2010 Roundtable and to know who drafted the detailed specification document contained in the RFP for the RSF project included project owners, designers, and builders, all of which are DesignSense clients and potential clients, including the government. This fact is supported by the transcript for the November 2010 Roundtable.

17. Shortly after learning about Judkoff's claim, David Shelton, an agent and owner of DesignSense, spoke with potential governmental customers of DesignSense. Some potential customers thought MRI/Alliance had drafted the detailed specifications included in the RSF RFP. When the record was corrected, DesignSense was able to negotiate to receive substantial work based on the fact that the customer knew that it had drafted the detailed specifications.

18. MRI/Alliance has caused confusion in the marketplace by making and publishing false and misleading statements to the public concerning their "development" and "writing" of the RFP's detailed design specifications or "Conceptual Documents", such as:

    - "NREL's building experts had distilled years of knowledge into an exacting 506-page Request for Proposals (RFP) for DOE to use in its selection of a design-build team for the $64 million project." (Source: Title "NREL's Research Support Facility and its Foundations in Energy Efficiency" published in the DOE/NREL Energy Innovations News Letter dated Summer 2010)

    - "Rather than specifying key building characteristics such as size, configuration, and construction, **DOE and NREL wrote the Request for Proposals (RFP) with three categories of building performance parameters:**" (Source: Title "Main Street Net-Zero Energy Buildings: The Zero Energy Method in Concept and Practice" published as Conference Paper, NREL/CP-550-47870, Paul Torcellini, et al, July 2010)(emphasis added).

    - "NREL developed a performance based design-build procurement process…This session will review NREL's ground breaking procurement process…NREL's use of performance specifications with substantiation requirements…is unique" (Source: USGBC Colorado Chapter website, Colorado Sustainability 2009 Conference promotional, Nancy Carlisle, et. al.)

    - "DOE and NREL selected a performance-based "Best Value Design-Build/Fixed Price with Award Fee" delivery approach… To support this process, the owner takes the responsibility to develop a clear, comprehensive request for proposals (RFP) that outlines the program and performance specifications and proposal requirements." (Source: "Controlling Capital Costs in High Performance Office Buildings: A Review of Best Practices for Overcoming Cost Barriers" by Paul Torcellini and Shanti Pless, National Renewable Energy Laboratory.

19. DesignSense drafted and authored the detailed design specifications in the RFP for the RSF project and DesignSense developed the performance based design build process. MRI and the Alliance attempted to create the understanding in the market place that they drafted the detailed design specifications.

20. Prior to hiring DesignSense, MRI and the Alliance represented that they had no knowledge or experience using the performance based design-build strategy that required the RFP as compared to traditional design-bid-build, which does not require an RFP.

21. After obtaining DesignSense's work, it was representing that it drafted and wrote

the critical aspects of the RFP and was presenting itself as an expert in the area to the detriment of DesignSense, the true drafter of the detailed specifications and owner of the performance based design build process.

22. Based on the MRI/DesignSense working relationship, DesignSense's qualification statements, and training provided by plaintiff and its agent David Shelton, MRI/Alliance had full knowledge of DesignSense's past clients and potential new clients in the agencies and departments of government.

23. MRI/Alliance as operator of the National Renewable Energy Laboratory (NREL), had full knowledge of the ongoing demand by all agencies and departments of the federal government to procure energy efficient buildings such as the RSF.

24. As operator of NREL, part of MRI/Alliance's mission is to develop renewable energy and energy efficiency technologies and practices, advance related science and engineering, and transfer knowledge and innovations to address the nation's energy and environmental goals.

25. Because of the overwhelming success of the RSF project and based on the mission of NREL, MRI/Alliance launched a public relations campaign to advance their business interests.

26. Included in this public relations campaign was the untruthful claim that "we wrote" the detailed design specifications. This false statement created confusion as to who authored the detailed design specifications.

27. Publically claiming to be the author of the technical specifications contained in the RFP before audiences such as the November 2010 Roundtable audience, which included DesignSense customers and potential customers, particularly in the public sector, was designed to advance MRI and the Alliance's goodwill and business to the detriment of DesignSense.

28. NREL's website promotes services that are directly in competition with Plaintiffs. At that website, NREL claims among other things that it can develop performance criteria, building characteristics, and asses the energy and economic impacts of various technologies, which are all the exact services offered by Plaintiff. See www.nrel.gov/buildings/commercial.html. Therefore, Defendants are competitors of Plaintiff.

29. The false public statements had the effect of robbing the author (plaintiff) of the opportunity to advance and profit from its portfolio, fame, qualifications, reputation, and recognition by all members of the design and construction industry that came in contact with the MRI/Alliance public relations campaign.

## Count I
### Tortious Interference with Current and Prospective Business Advantages

DesignSense, for Count I of its Petition against MRI and the Alliance, states:

30. DesignSense incorporates and restates its allegations in paragraphs 1-29 into this Count.

31. DesignSense has a business relationship with it's current and potential customers, including many governmental agencies that have significant funds available to develop building projects similar to the RSF using DesignSense's business processes.

32. DesignSense had a reasonable expectation of future business with current customers and further relationships based on its work on the RFP and the technical specifications with entities it already had business relationships with and with potential new customers.

33. MRI knew about these relationships and the expectancy of future business related to the drafting of the technical specifications included in the RFP.

34. Except for MRI's misrepresentation on authorship of the technical specifications included in the RFP, DesignSense was reasonably certain to have realized the business expectancy of generating additional business as a result of its work on the drafting of the design specifications in the RFP.

35. MRI and the Alliance's misrepresentation was intentional and malicious.

36. If not for the Defendants interference with Plaintiff's valid business expectancy, and the interference by Defendants through the November 2010 Roundtable and its marketing campaign directed at Plaintiff's customers, Plaintiff was reasonably certain to have secured additional business. As described below, several customers and potential customers (e.g. Army Corps of Engineers, SLAC, and Texas A&M University) have told Plaintiff that they did not know Plaintiff wrote the design specifications in the RSF RFP because of Defendants promotional activities and that when the record was clarified these customers either hired Plaintiff or started negotiations for additional business.

37. DesignSense has suffered damages to be proven at trial as a result of the misrepresentations.

Wherefore, for the above-stated reasons, DesignSense, Inc. respectfully requests that the Court enter a judgment in its favor and against MRI and the Alliance under Count I for a sum that exceeds $75,000, together with attorney fees and costs of this action, accrued interest at the rate allowable by law, and any additional relief as this Court may deem just and proper.

## Count II
## Fraud

DesignSense, for Count II of its Petition against MRI/Alliance, states:

38. DesignSense incorporates and restates its allegations in paragraphs 1-29 into this Count.

39. The false representation of authorship of the detailed specifications included in the RFP made at the November 2010 Roundtable by Judkoff, in addition to the other false claims as described above were made as a statements of material fact.

40. MRI and the Alliance's statements that it was responsible for the performance based design build process are not true.

41. These statements and claims were known to be false or were recklessly made without knowledge concerning the actual truth.

42. The Judkoff statements and other statements detailed above were intentionally made for the purpose of inducing others to act upon them.

43. The receiving parties reasonably relied on the statements and claims, injuring DesignSense.

44. Plaintiff relied on the Defendants to truthfully state the author of the design specifications in the RSF RFP and to Plaintiff relied on Defendants to not claim authorship to attempt to take business from it.

45. The Judkoff statements and other statements detailed above were material and influenced customers and potential customers to look elsewhere for the authorship of the detailed specifications included in the RFP.

Wherefore, for the above-stated reasons, DesignSense respectfully requests that the Court enter a judgment in its favor and against MRI and the Alliance under Count II for a sum that exceeds $75,000, together with attorney fees and costs of this action, accrued interest at the rate allowable by law, and any additional relief as this Court may deem just and proper.

## Count III
## Conversion

DesignSense, for Count III of its Petition against MRI/Alliance, states:

46. DesignSense incorporates and restates its allegations in paragraphs 1-29 into this Count.

47. The false representation made by Judkoff relating to authorship of the detailed specifications included in the RFP made at the November 2010 Roundtable and MRI statements cited above were made as a statement of material fact and was made for the purposes of claiming authorship of the detailed specifications.

48. The false and misleading representation made by MRI and the Alliance that it was responsible for producing the performance based design build process also was untrue. By claiming authorship, Defendants took possession of that asset to the exclusion of Plaintiff with the intent to exercise control over it, which is demonstrated by their website and their business claims that claim ownership and then post the RSF RFP.

49. By claiming authorship of the detailed design specifications, Defendants have also converted Plaintiff's business and future expectation of profit that could reasonably be generated as a result of the goodwill flowing from the RSF project.

50. These Judkoff statements and claims of producing the performance based design build process were claim of ownership and a claim of authorship in opposition to the true owner and author DesignSense.

51. DesignSense has made claims and demands for authorship attribution for the detailed specifications and performance based design build process, but MRI has

refused to return the authorship attribution to DesignSense.

52. MRI's actions had the effect of converting DesignSense's authorship and property for its own commercial gain.

53. DesignSense has been damaged by MRI's conversion of its personal property.

Wherefore, for the above-stated reasons, DesignSense respectfully requests that the Court enter a judgment in its favor and against MRI and the Alliance under Count III for a sum that exceeds $75,000, together with attorney fees and costs of this action, accrued interest at the rate allowable by law, and any additional relief as this Court may deem just and proper.

### Count IV
### Negligent Misrepresentation

DesignSense, for Count IV of its Petition against MRI/Alliance, states:

54. DesignSense incorporates and restates its allegations in paragraphs 1-29 into this Count.

55. The false representation made by Judkoff relating to authorship of the detailed specifications included in the RFP made at the November 2010 Roundtable and as further detailed above were made as a statement of material fact was false information supplied to the audience to guide them relating to the authorship of the detailed specifications.

56. The transcript from the November 2010 Roundtable is available on the internet.

57. The statements that MRI and the Alliance developed the performance based design build process also are not true.

58. MRI and the Alliance, in supplying the false information relating to creation of the detailed specifications included in the RFP and the development of the performance based design build process failed to exercise reasonable care or competence in communicating the false information.

59. DesignSense relied on MRI and the Alliance to only use the detailed specifications as permitted and to not falsely claim that it created the specifications.

60. The audience at the November 2010 Roundtable and those who later viewed the Transcript on line relied on MRI and the Alliance to properly describe the creation of the detailed specifications.

61. These Judkoff statements were known to be false or were recklessly made without knowledge concerning them.

62. The MRI/Alliance claims to have developed the performance based design build process also were untrue or made recklessly.

63. The Judkoff statements and claims relating to the development of the performance based design build process were intentionally made for the purpose of inducing

others to act upon them.

64. The receiving parties reasonably relied on the MRI/Alliance statements, injuring DesignSense.

65. Plaintiff relied on Defendants to tell the truth about who authored the design specifications in the RSF RFP.

66. The Judkoff statements and the statements relating to development of the performance based design build process were material and influenced the DesignSense customers and potential customers to look elsewhere for the authorship of the detailed specifications included in the RFP.

Wherefore, for the above-stated reasons, DesignSense respectfully requests that the Court enter a judgment in its favor and against MRI and the Alliance under Count IV for a sum that exceeds $750,000, together with attorney fees and costs of this action, accrued interest at the rate allowable by law, and any additional relief as this Court may deem just and proper.

## Count V
## Negligence

DesignSense, for Count V of its Petition against MRI/Alliance, states:

67. DesignSense incorporates and restates its allegations in paragraphs 1-29 into this Count.

68. MRI owed a duty to DesignSense to not misrepresent the creation and authorship of the detailed design specifications or the development of the performance based design build process.

69. MRI breached that duty by claiming it created and authored the detailed specifications at the November 2010 Roundtable and that it developed the performance based design build process, and as further detailed herein.

70. Plaintiff reasonably relied on Defendants to tell the truth about the authorship of the design specifications in the RSF RFP.

71. As a direct and proximate result of this breach of duty, the false representation made by Judkoff relating to creation and authorship of the detailed specifications included in the RFP made at the November 2010 Roundtable, the claims of development of the performance based design build process, and as further detailed herein, DesignSense was damaged in an amount to be proven at trial.

Wherefore, for the above-stated reasons, DesignSense respectfully requests that the Court enter a judgment in its favor and against MRI and the Alliance s under Count I for a sum that exceeds $75,000, together with attorney fees and costs of this action, accrued interest at the rate allowable by law, and any additional relief as this Court may deem just and proper.

## Count VI
## §43(a) Lanham Act False Designation of Origin

DesignSense, for Count VI of its Petition against MRI and the Alliance, states:

72. DesignSense incorporates and restates its allegations in paragraphs 1-29 into this Count.

73. MRI and the Alliance have claimed in public advertising and marketing materials that it drafted and authored the detailed specification document included in the RFP at the November 2010 Roundtable and as further detailed above, which are false claims.

74. MRI and the Alliance also claimed to have developed the performance based design build process used on the RSF.

75. MRI and the Alliance's claim of authorship and creation relating to the detailed specifications document included in the RFP and the development of the performance based design build process has caused confusion as to the origin and creation of the of the detailed specification document in the RFP.

76. Defendants have misrepresented the nature, characteristics, qualities and origin of the detailed specification document included in the RFP and the development of the performance based design build process.

77. The misrepresentation was material. Customers and potential customers have told DesignSense that they thought MRI and the Alliance drafted the detailed specifications for the RFP and were responsible for the development of the performance based design build process. When the customers and potential customers learned of the truth, they entered into negotiations with DesignSense for business, which they would not have done without the correction.

78. MRI and the Alliance placed the incorrect advertising into commerce as described above despite knowledge of DesignSense's authorship and DesignSense's requests for authorship credit.

79. As a result of this violation, DesignSense has been damaged and continues to be damaged as a result of the direct diversion of sales from plaintiff to defendant and by a loss of goodwill associated with its products.

Wherefore, for the above-stated reasons, DesignSense respectfully requests that the Court enter a judgment in its favor and against MRI and the Alliance under Count VI for a sum that exceeds $75,000, together with attorney fees and costs of this action, accrued interest at the rate allowable by law, and any additional relief as this Court may deem just and proper.

## Count VII
## Common Law False Designation of Origin

DesignSense, for Count VII of its Petition against MRI and the Alliance, states:

80. DesignSense incorporates and restates its allegations in paragraphs 1-29 into this Count.

81. MRI and the Alliance have claimed in public advertising and marketing materials

that it drafted and authored the detailed specification document included in the RFP at the November 2010 Roundtable and as further detailed above, which are false claims.

82. MRI and the Alliance also claimed to have developed the performance based design build process used on the RSF.

83. MRI and the Alliance's claim of authorship and creation relating to the detailed specifications document included in the RFP and the development of the performance based design build process has caused confusion as to the origin and creation of the of the detailed specification document in the RFP.

84. Defendants have misrepresented the nature, characteristics, qualities and origin of the detailed specification document included in the RFP and the development of the performance based design build process.

85. The misrepresentation was material. Customers and potential customers have told DesignSense that they thought MRI and the Alliance drafted the detailed specifications for the RFP and were responsible for the development of the performance based design build process. When the customers and potential customers learned of the truth, they entered into negotiations with DesignSense for business, which they would not have done without the correction.

86. MRI and the Alliance placed the incorrect advertising into commerce as described above despite knowledge of DesignSense's authorship and DesignSense's requests for authorship credit.

87. As a result of this violation, DesignSense has been damaged and continues to be damaged as a result of the direct diversion of sales from plaintiff to defendant and by a loss of goodwill associated with its products.

Wherefore, for the above-stated reasons, DesignSense respectfully requests that the Court enter a judgment in its favor and against MRI and the Alliance under Count VII for a sum that exceeds $75,000, together with attorney fees and costs of this action, accrued interest at the rate allowable by law, and any additional relief as this Court may deem just and proper.

## Count VIII
## Common Law Unfair Competition

DesignSense, for Count VIII of its Petition against MRI/Alliance, states:

88. DesignSense incorporates and restates its allegations in paragraphs 1-29 into this Count.

89. MRI and the Alliance have communicated false marketing and advertising information related to the authorship of the detailed specifications in the RSF RFP and the development of the performance based design build process.

90. The false marketing and advertising was designed to induce, and was likely induce, the receivers of the false information to believe that MRI and the Alliance

drafted the detailed specifications in the RFP and had developed the performance based design build process.

91. MRI and the Alliance made the false statements to induce others to use their services and to create the impression of competence.

92. The effect of the false marketing and advertising was to injure Plaintiff, to take business from Plaintiff, to interfere with Plaintiff's business and its business expectations, and to cause it damages.

93. The dissemination of the false information is an unfair trade practice under 15 U.S.C. §'s 45 and 52.

Wherefore, for the above-stated reasons, DesignSense respectfully requests that the Court enter a judgment in its favor and against MRI and the Alliance under Count VIII for a sum that exceeds $75,000, together with attorney fees and costs of this action, accrued interest at the rate allowable by law, and any additional relief as this Court may deem just and proper.

## PRAYER FOR RELIEF

WHEREFORE, DesignSense, Inc prays for judgment in its favor against MRI and Alliance as follows:

(a) That MRI and Alliance have wrongly misappropriated the intellectual property of DesignSense, Inc. for their own gain, either negligently or knowingly;
(b) That MRI and Alliance have falsely misrepresented the origin of documents prepared and/or created by DesignSense, Inc.;
(c) That MRI and Alliance interfered with prospective business prospects of DesignSense, Inc. by misappropriating and misrepresenting the origin of documents prepared and/or created by DesignSense, Inc.;
(d) That DesignSense, Inc. be awarded damages against MRI and Alliance, jointly and severally, for the misappropriation of works and intellectual property of DesignSense, Inc.;
(e) For an award of costs and reasonable attorneys' fees under 15 USC §1117(a) and other applicable laws; and
(f) For an award of damages under each of Counts I-VIII; and
(g) For such other and further relief, at law and in equity, as the court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

DesignSense, Inc. demands a trial by jury in the above-captioned cause on all issues so triable.

## DESIGNATION OF PLACE OF TRIAL

DesignSense, Inc designates Kansas City, Missouri as place of trial.

Hyland Law Firm LLC

/s Charles J. Hyland
Charles J. Hyland, MO#41486
7300 West 110th St., Suite 930
Overland Park, KS 66210
(913) 498-1911
(913) 498-1950 (fax)
Charlie@hylandkc.com
ATTORNEY FOR PLAINTIFF